JACOB CARR, as Trustee in Bankruptcy of QUAKER LAUNDRY
COMPANY, INC., Plaintiff, *v.* GODFREY KEELER COMPANY, INC.,
Defendant.

Municipal Court of New York, Borough of Brooklyn, First District,
April 29, 1937.

[redacted]

*Nathaniel Greenbaum*, for the plaintiff.

*Maurice R. Cheyette*, for the defendant.

JOHNSON, J. The facts in this case are not seriously in dispute; at least the important facts are not. I think the law is that the plaintiff trustee is in the same position that the Quaker Company would be in if it were not in bankruptcy and were the plaintiff. It will clarify my view of the case to treat the action, therefore, as one by the Quaker Company whereby it seeks to punish the defendant for not having complied with the statute after the defendant took back the chattel in question. That chattel continued at all times to be a chattel, and I find nothing in the evidence that would permit the finding that it became real estate. It would take time and trouble to detach it from the realty but that is not the test of its ceasing to be a chattel. Even if the evidence would permit finding it to have become part of the real estate, I do not make that finding.

The corporation which purchased these chattels from the defendant by a conditional bill of sale later assigned its interest to the Quaker Company, ceased to do business and made no further payments. The chattels were always in the same building, and the Quaker Company was apparently a two-man corporation, Peterson being the important officer and apparently the executive official of the Quaker Company. Thereafter, the payments on the unpaid balance for the chattels were made by the Quaker Company to the assignee for those unpaid sums. About April, 1936, the Quaker Company became insolvent, was about to quit business, was about to suffer a foreclosure of a chattel mortgage on all its tangible assets, and at that time without there being any evidence that any stockholder or officer of the Quaker Company objected or that he was not doing that which was agreeable to them, Peterson did the natural and decent thing, as he thought, towards the defendant which had not been paid in full for these chattels which the Quaker Company still had. He notified the defendant of the company's situation, arranged what under the circumstances was a rescission of the agreement as of that date, or perhaps more accurately, an accord and satisfaction, by agreeing that the chattels

might be retaken by the defendant which still had title to them so that the defendant might suffer as little loss as possible through the resale to some one whom Peterson had found for them and who would be a customer for the chattels, and that thereupon the whole transaction should be deemed closed and the notes be forgotten.

That arrangement was carried out as fully as ordinary intelligent men would be expected to carry it out, namely, by the repossession of the chattels, the sale of them by the defendant to that customer provided by Peterson, a marking on the defendant's books a declaration against interest to the effect that the notes were not to be paid, the physical putting away of the notes as if they were no longer to be regarded as unpaid notes, and thereafter the two corporations through their officers believed and acted as if the matter was entirely closed.

If it be necessary, as I think not, for there to be any specific consideration for this transaction, change of position on the part of each was ample consideration because change of position is always consideration. At that time there is no suggestion that any bankruptcy by the Quaker Company was in contemplation. The Godfrey Company changed its position in that, relying upon the words and acts of the Quaker Company's proper officers, it did something not authorized by law and ignored those specific provisions of the statute which, if ignored, would under ordinary circumstances incur the penalty that is sought to be enforced in this action. There is no evidence that by the resale the defendant was completely paid for the original purchase price with the arrears of interest, so that out of the whole transaction there does not appear to have been any net benefit but rather a lesser loss.

I cannot think of a more typical illustration of a consummated accord and satisfaction; the two corporations still doing business agree by their proper officers to exchange claims, the Quaker Company to give up its custody of the chattels and to procure a buyer for them, both of which acts were consideration; and the Godfrey Company agreed to waive its rights to sue for the balance and agreed to take back the goods and sell them under circumstances that did not wholly pay the company, leaving them worse off than they were entitled to be. This arrangement was carried out by both sides in good faith and the corporations by their proper officers did everything that could have been done to consummate this arrangement. There was no need to physically tear up the notes or to have any written arrangement or to formally invalidate the conditional sales agreement. Thereafter the Quaker Com-

pany accused the defendant of having violated the law in this very transaction of which it was the proposer and of which it was the moving agent in carrying out, and wants the defendant to pay the penalty prescribed by the statute because the defendant, relying upon the representations and solicitations of the Quaker Company, sold directly to the one procured by it without going through the formalities which the statute prescribes. I think such a claim by the Quaker Company to be plainly dishonest, and I cannot believe that it would be any less so to allow the trustee in bankruptcy to make it. If ever there was an estoppel, this ought to be one, and to decide for the plaintiff is merely to say that parties cannot agree between themselves to surrender their respective rights to each other and settle their business obligations and consummate an accord and satisfaction if they desire to do so. Perhaps in so doing they will do an act that creditors in bankruptcy might later attack as fraud upon them, or they may subject themselves to an action in equity to set aside a transaction for similar reasons, but it is incredible that when one side has lured the other into taking this position, it can turn on them for it and claim that the law has been violated and that the one that is the author of the transaction is to get money for having successfully induced the other party to carry through the plan. It seems to me that is a perfect illustration of profiting by your own act, assuming for the moment that it was wrong for the defendant to resell the chattel without going through the statutory formalities. I do not know what remedies the Quaker Company's creditors may have but they are not suing here on that theory and could only do so in an equity court. The action here is strictly at law for a statutory penalty and I see no grounds for it whatever.

Judgment for the defendant on the merits. Five days' stay.